**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **WILLIAM TONY WIDNER, Individually** | : | |
| **and as Representative of Similarly Situated** | : | |
| **Landscape Architects in Georgia,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **5:04-CV-341(DF)** |
| | : | |
| **WILLIAM DEAN, THEODORE WADDLE,** | : | |
| **DORIS WILLMER, E. CHARLES VICKERY,** | : | |
| **RICHARD LITTLE, MARK CHASTAIN,** | : | |
| **GUY RITTER, JR., GLORIA RANSOM, and** | : | |
| **JOHN SWEITZER, individually,** | : | |
| | : | |
| **Defendants.** | : | |

**O R D E R**

## I.    INTRODUCTION

In 2004, Plaintiff William Tony Widner ("Plaintiff") filed this § 1983 action against the State

of Georgia Board of Registration for Professional Engineers and Land Surveyors ("Board") and

its individual members, claiming the Board's regulation of his advertisements placed an

unconstitutional restraint on his First Amendment right to free commercial speech.  Before this

Court is Defendants' Motion for Summary Judgment (doc. 62).  For the reasons articulated below,

Defendants' summary-judgment motion is **DENIED**.

## II.    STANDARD OF REVIEW

The summary-judgment rule exists "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also* *Celotex Corp.*, 477 U.S. at 322.  A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In reviewing a motion for summary judgment, a court must review all the evidence in the record while "draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also* *Maynard v. Williams*, 72 F.3d 848, 851 (11th Cir. 1996).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and entitle it to a judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted).  If the moving party discharges this burden, the burden shifts to the nonmoving party to go beyond the

pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## III. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a licensed landscape architect. On May 11, 2004, Plaintiff received a certified letter from the Board requesting his presence at an investigative interview concerning his practice, which he attended on June 15, 2004. During the interview, the Board accused Plaintiff of improperly offering to perform engineering and surveying services in connection with his business as a landscape architect. Specifically, the Board objected to Plaintiff's use of the terms "site engineering" and "engineering" in his business advertisements and to Plaintiff's alleged performance of these services as a central part of his business.[1] The Board claimed that Plaintiff's use of these terms implied to the public that the engineering services to be performed were central to Plaintiff's business, rather than incidental to his primary work as a landscape architect. And,

---

[1] For a detailed list of the advertising materials at issue in this case, see Defendants' Motion for Summary Judgment, Attachment 4, at 1-2.

3

because Plaintiff is not a licensed engineer, the Board believed his use of this terminology constituted an offer to practice professional engineering, in violation of O.C.G.A. § 43-15-7(a) (Lexis 2005).[2]  Notwithstanding the Board's allegations, Plaintiff refused to remove the terminology at issue from his business cards and signs, claiming that his advertisements were not misleading because Georgia law authorized him to perform this type of work.  Shortly thereafter, the Board notified Plaintiff it planned to charge him with "holding himself out as an engineer" through a formal hearing process.  (Pl.'s Resp. Defs.' Mot. Summ. J., doc. 64, at 2.)

On October 12, 2004, Plaintiff filed the instant suit (Compl., doc. 1) against the Board, claiming that the Board could not force him to remove the terminology at issue from his business publications because his advertisements were commercial speech protected by the First Amendment.  Plaintiff also alleged that the Board violated his Fourteenth Amendment rights to equal protection and due process by not permitting him to advertise and perform certain engineering services, such as site engineering, that are incidental to his practice as a landscape architect.  On December 3, 2004, Plaintiff amended his Complaint (doc. 7), adding the individual Board members as Defendants.

Not long thereafter, Defendants moved to dismiss Plaintiff's original and amended

---

[2] Section 43-15-7(a) provides: "It shall be unlawful for any person other than a professional engineer to practice or offer to practice professional engineering in this state."  Under O.C.G.A. § 43-15-2(11), a person is construed as offering to practice professional engineering if he "by verbal claim, sign, advertisement, letterhead, card, or in any other way represents or holds himself out as a professional engineer or engineer or as able or qualified to perform engineering services. . . ."

complaints. On April 11, 2005, the Court entered an order dismissing Plaintiff's official capacity and Fourteenth Amendment claims against the Board and its members, but allowing Plaintiff's First Amendment claim against the Board members in their individual capacities to proceed. (Order, doc. 42.)

On August 1, 2005, Plaintiff filed a Motion for Preliminary Injunction (doc. 53) to enjoin the Board from holding a state administrative hearing on the matter. During a hearing on Plaintiff's motion, the Court orally denied Plaintiff's request for injunctive relief, but suggested that the case could be resolved if Plaintiff simply altered his advertisements to state: "Although I am not a licensed engineer, I am a licensed landscape architect and may provide such engineering services as may be incidental to the practice of landscape architecture." (Oral Arg. Tr., Aug 8, 2005, doc. 57, at 50-51.) Although both parties appeared amenable to this solution at the time, the Board later elected to proceed with a state administrative hearing.

On August 11, 2005, Administrative Law Judge ("ALJ") Patrick Woodward of the Office of State Administrative Hearings ("OSAH") conducted a formal hearing. On November 4, 2005, Judge Woodward entered an order recommending that Plaintiff "cease and desist" from offering to provide professional engineering services. Specifically, Plaintiff was ordered to delete the term "site engineering" from his business cards, brochures, signs, and other advertising materials, and to cease and desist from claiming that he "prepares site plans to meet engineering requirements."[3]

_____

[3] Judge Woodward found that Plaintiff's advertisement that his company performed "site engineering" and "engineering" services did not adequately indicate that such services are only incidental to his practice as a

5

(Def.'s Mot. Summ. J., doc. 60, Attach. 1, at 5-6).

On February 13, 2006, Plaintiff filed a Petition for Judicial Review in the Superior Court of Bibb County, Georgia. On February 24, 2006, Defendants filed their Motion for Summary Judgment (doc. 62) in this Court. On March 15, 2006, the superior court held a hearing on Plaintiff's petition. Five days later, the court denied Plaintiff's petition, finding that the ALJ's initial decision was supported by sufficient evidence. (Defs.' Reply Br., doc. 66, Attach. 1, at 1-2.) Plaintiff filed an Application for Discretionary Appeal with the Georgia Court of Appeals on April 19, 2006. (Pl.'s Surreply, doc. 70, at 3.) Plaintiff's appellate application is currently awaiting disposition.

## IV.    LEGAL DISCUSSION

Plaintiff asserts that Defendants' attempted restriction of the scope of his advertising activities violates his right to free commercial speech under the First Amendment, as applied to the States by the Fourteenth Amendment.[4] Defendants claim that they are entitled to qualified immunity from Plaintiff's foregoing claim. Before addressing the parties' substantive arguments, however, the Court first must address Defendants' argument that this Court is without

---

professional landscape architect. As such, Judge Woodward concluded that Plaintiff violated the specific language and spirit of O.C.G.A. §§ 43-15-7(a) and 43-15-2(11), because a reasonable person could conclude from Plaintiff's advertisements that Plaintiff offered professional engineering services in addition to his professional landscape architecture services, instead of offering only those engineering services which were incidental to the practice of landscape architecture, as allowed by O.C.G.A. § 43-23-16. Notably, Judge Woodward did not prohibit Plaintiff from providing engineering services incidental to his practice of landscape architecture, nor did he prohibit Plaintiff from including accurate information in his advertising.

[4] *See **New York Times v. Sullivan**, 376 U.S. 254, 276-78 (1964) (applying the First Amendment to the states).

jurisdiction to consider Plaintiff's claim.

## A. Res Judicata

As an initial matter, Defendants argue that this Court does not have jurisdiction over this case because Plaintiff's First Amendment claim is barred by the doctrine of res judicata.[5] Specifically, Defendants argue that Plaintiff cannot pursue his First Amendment claim in this Court because he could have litigated that claim in state superior court, but chose not to do so.

"A federal court must apply the law of the state in which it sits with respect to the doctrine of res judicata." *McDonald v. Hillsborough County School Bd.*, 821 F.2d 1563, 1565 (11th Cir. 1987). In Georgia, the doctrine of res judicata is codified in O.C.G.A. § 9-12-40, which provides:

> A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.

O.C.G.A. § 9-12-40 (Lexis 2005). In accordance with this provision, Georgia courts have held that a subsequent action is barred by the doctrine of res judicata when <u>all three</u> of the following requirements are met: (1) the first action involved an adjudication by a court of competent jurisdiction; (2) the two actions had an identity of parties and subject matter; and (3) the party against whom the doctrine of res judicata is raised had a full and fair opportunity to litigate the

---

[5] "Res judicata actually encompasses two different preclusion doctrines: claim preclusion and issue preclusion." *Pelletier v. Zweifel*, 921 F.2d 1465, 1501 (11th Cir. 1991). "Claim preclusion bars the litigation of matters that could have been litigated in an earlier suit, but were not. Issue preclusion, on the other hand, bars the relitigation of matters that were actually litigated and decided in a prior suit." *Id.* In this case, Defendants' res judicata argument rests on the claim-preclusion doctrine.

issues in the first action. ***Int'l Biochemical Indus., Inc. v. Jamestown Mgmt. Corp.***, 586 S.E.2d 442, 446 (Ga. Ct. App. 2003). The proponent of the defense of res judicata bears the burden of proving that the foregoing requirements are met. ***Rafizadeh v. KR Snellville LLC***, 634 S.E.2d 406, 410 (Ga. Ct. App. 2006). Thus, the first issue the Court must address is whether the prior suit between these parties in state superior court involved an adjudication by a court of competent jurisdiction.

## Adjudication by a Court of Competent Jurisdiction

To satisfy the first requirement for res judicata under Georgia law, Defendants must demonstrate that the prior suit was adjudicated by a court of competent jurisdiction. ***Jamestown Mgmt. Corp.***, 586 S.E.2d at 446. A suit is not considered "adjudicated" for res judicata purposes until a final judgment has been entered. ***Costanzo v. Jones***, 409 S.E.2d 686, 689 (Ga. Ct. App. 1991). In Georgia, a judgment is not "final" so long as a party has a right to appellate review. ***CS-Lakeview At Gwinnett, Inc. v. Retail Dev.***, 602 S.E.2d 140, 142 (Ga. Ct. App. 2004); ***Reid v. Reid***, 411 S.E.2d 754, 756 (Ga. Ct. App. 1991); ***Greene v. Transport Ins. Co.***, 313 S.E.2d 761, 763 (Ga. Ct. App. 1984); ***Lexington Developers, Inc. v. O'Neal Const. Co.***, 238 S.E.2d 770, 771 (Ga. Ct. App. 1977).

Here, a "final" judgment has not been entered in the state-court proceeding. When Plaintiff filed a timely Application for Discretionary Appeal with the Georgia Court of Appeals, the finality of the superior court's judgment was suspended pending the resolution of Plaintiff's appeal. *See Greene*, 313 S.E.2d at 763. At this time, Plaintiff's appeal is still pending. Accordingly,

in the absence of a final judgment by a state court on the merits of Plaintiff's claim, the instant federal action is not barred by the doctrine of res judicata, and this Court has jurisdiction to address the merits of Plaintiff's First Amendment claim.

## B. The First Amendment and Qualified Immunity

"To prevail in a civil rights action under 42 U.S.C. § 1983, a plaintiff must show that the defendant, under color of state law,[6] deprived Plaintiff of a right secured by the Constitution and laws of the United States." *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). "Section 1983 alone creates no substantive rights; rather it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Id.* "An underlying constitutional right must exist before a § 1983 action will lie." *Id.*

Although § 1983 creates a cause of action against state actors, a state actor acting within the scope of his or her official duties at the time of the alleged constitutional violation nonetheless may be entitled to qualified immunity from such actions. Qualified immunity shields a government official performing discretionary functions from liability for civil damages unless the performance of such functions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *McElligott v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999) (internal citations and quotation marks omitted).

To be eligible for the protection of qualified immunity, a state official must prove that he

---

[6] It is undisputed that Defendants acted under color of state law at all times relevant to this lawsuit.

was performing a discretionary function "when the allegedly wrongful act occurred." ***Rich v. Dollar***, 841 F.2d 1558, 1563 (11th Cir. 1988). If the defendant satisfies this threshold inquiry, the burden shifts to the plaintiff to demonstrate "that the defendant public official's actions 'violated clearly established constitutional law.'" ***Id.*** (quoting ***Zeigler v. Jackson***, 716 F.2d 847, 849 (11th Cir. 1983)). Courts employ a two-step analysis to determine whether or not the plaintiff has satisfied this burden. The first inquiry is whether the defendant violated a constitutional right. If a constitutional violation is found, the court will then determine whether the constitutional right was clearly established at the time of the violation. ***Crosby v. Monroe County***, 394 F.3d 1328, 1332 (11th Cir. 2004).

**1.     Was Defendants' Regulation of Plaintiff's Advertisements a Discretionary Function?**

The Court's first task is to determine whether Defendants' regulation of Plaintiff's advertisements was within the scope of their discretionary authority as members of the Board. Plaintiff contends that Defendants are not eligible for the protection of qualified immunity because their regulation of Plaintiff's advertisements exceeded the scope of their discretionary authority. According to Plaintiff, "the authority to regulate the profession of landscape architecture is vested solely in the Georgia Board of Landscape Architects pursuant to O.C.G.A. § 43-23-2." (Pl.'s Resp. 10.) Because he is a landscape architect, and is not a professional engineer or land surveyor, Plaintiff claims that he is not subject to the Board's regulatory authority. Defendants, on the other hand, argue that they had the discretionary authority to take action against Plaintiff  because

"[t]he board has a duty through its board members [to] regulate their profession and prevent unlicensed practice." (Defs.' Br. 13.)

A defendant's actions are deemed to be within the scope of his or her discretionary authority if "objective circumstances . . . compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." **Rich**, 841 F.2d at 1564 (internal citations and quotation marks omitted). In Georgia, it is "unlawful for any person other than a professional engineer to practice or to offer to practice professional engineering." O.C.G.A. § 43-15-7 (Lexis 2005). Pursuant to O.C.G.A. § 43-15-26, the Board is charged with enforcing O.C.G.A. § 43-15-7, and is permitted, after notice and a hearing, to "issue an order prohibiting a person from violating O.C.G.A. § 43-15-7." O.C.G.A. § 43-15-26 (Lexis 2005). Moreover, "[a]ny person offering services to the public who uses by name, verbal claim, sign, advertisement, directory listing, or letterhead the words 'Engineer,''Engineers,' 'Professional Engineering,' 'Engineering,' or 'Engineered' shall be guilty of a misdemeanor unless said person has complied with the provisions of [ ] chapter [43]." O.C.G.A. § 43-15-30(f) (Lexis 2005).

Plaintiff's argument that he is only subject to the regulatory authority of the Georgia Board of Landscape Architects is without merit. Here, it is clear that the Board has discretionary authority under O.C.G.A. § 43-15-26 to prevent the unlicensed practice of engineering. Because the Board believed Plaintiff's advertisement was an offer to practice professional engineering by an unlicensed engineer, in violation of O.C.G.A. §§ 43-15-7 and 43-15-30, the Board's decision to

initiate proceedings pursuant to O.C.G.A. § 43-15-26 to restrict Plaintiff's use of certain terminology in his advertising was a discretionary function. Accordingly, the Court finds that Defendants are entitled to assert qualified immunity in this case.

**2.      Has Plaintiff Established a Constitutional Violation?**

To overcome Defendants' assertions of qualified immunity, Plaintiff must show that Defendants' actions violated clearly established constitutional law. To determine whether Plaintiff has made this showing, the Court must first examine whether the facts, construed Plaintiff's favor, establish that Defendants violated his First Amendment right to commercial speech by regulating the content of his advertisements.

Commercial speech occurs in an area traditionally subject to government regulation and is afforded less protection than other constitutionally protected forms of expression. *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 455-56 (1978). The First Amendment does, however, afford commercial speech limited protection from unwarranted governmental regulation. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980). To determine whether commercial speech is entitled to the protection of the First Amendment, this Court must apply the following four-part test outlined in *Central Hudson*. First, the Court must decide whether the commercial speech at issue concerns a lawful activity and is not inherently misleading. *Id.* at 564. Next, the Court must ascertain whether the asserted governmental interest in regulating that particular form of commercial speech is substantial. *Id.* If both inquiries yield positive answers,

the Court must then determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than necessary to serve that interest. ***Id.***

**a. Lawful Activities; Misleading Speech**

**(i) Did Plaintiff's Advertisement Concern a Lawful Activity?**

Plaintiff alleges that the challenged advertisement concerns a lawful activity: landscape architecture. Although Plaintiff is not a licensed engineer, he claims that, because he is authorized by O.C.G.A. § 43-23-16[7] to perform engineering services "incidental to the practice of landscape architecture," he is also authorized to advertise that he provides such services. Defendant does not contend that Plaintiff is not authorized to provide incidental engineering services. Defendant does maintain, however, that Plaintiff's advertisement of such services is unlawful because his advertisement constitutes an "offer to practice professional engineering services," in violation of O.C.G.A. § 43-15-7.

Because O.C.G.A. § 43-23-16 authorizes Plaintiff to perform engineering services "incidental to the practice of landscape architecture," the Court finds that the advertisement (though not necessarily the actual advertisements at issue) of his ability to perform such services concerns a lawful activity. *See **Abramson v. Gonzalez**, 949 F.2d 1567, 1577 (11th Cir. 1992).

---

[7] Section 43-23-16 provides, in pertinent part:

> Nothing in this chapter shall be construed as . . . excluding a landscape architect registered under this chapter from such architectural or engineering practices as may be incidental to the practice of landscape architecture.

O.C.G.A. § 43-23-26 (Lexis 2005).

13

**(ii) Was Plaintiff's Advertisement Misleading?**

In addition to proving that his advertisement concerns a lawful activity, Plaintiff must also demonstrate that his advertisement is not inherently misleading in order for it to be protected by the First Amendment. Plaintiff concedes that, when read alone, his use of the term "site engineering" in his brochure is potentially misleading. Plaintiff also contends, however, that when viewed in the proper context, his use of this phrase is not inherently misleading because it is used along with terms like "landscape architecture," "land planning," and "urban design." (Pl.'s Resp. Br. 15.) Likewise, Plaintiff argues that his use of the word "engineering," when read in its proper context, is not inherently misleading because "the context shows that any engineering services [offered] are in connection with landscape architecture." (Id.) For their part, Defendants claim that Plaintiff's use of the foregoing terminology in his advertisements "inherently confuses and misleads the public by suggesting that 1) engineering is central to Plaintiff's practice; 2) that Plaintiff operates an engineering firm; and/or 3) that he provides professional engineering services in addition to professional [landscape] architecture services." (Defs.' Br. 16.)

Here, there is no question that the speech at issue is somewhat misleading. The key issue for determination is whether the commercial speech at issue here is inherently misleading or only potentially misleading. *See **Abramson***, 949 F.2d at 1576. A "state may prohibit [inherently] misleading advertising entirely;" however, "it may not place an absolute prohibition on potentially misleading information if the information may also be presented in a way that is not

14

deceptive." ***Id.*** (quoting ***Peel v. Attorney Registration & Disciplinary Comm'n***, 496 U.S. 91, 100 (1990)).  Thus, while states may absolutely prohibit commercial speech that is inherently misleading, potentially misleading commercial speech is entitled to First Amendment protection from state regulation unless the other three prongs of the *Central Hudson* test are met.

In *Abramson*, a group of practicing psychologists, clinical social workers, therapists, and the Florida Psychological Practitioners' Association brought a First Amendment challenge to Florida's statutes regulating the practice of psychology.  ***Id.*** at 1570.  One of the challenged statutes prohibited persons who were not licensed psychologists from holding themselves out as psychologists by using the words "psychologist," "psychology," "psychological," or other related terms.  According to the plaintiffs, this regulation placed an unconstitutional burden on their First Amendment right to free commercial speech.  ***Id.*** at 1570-71.  Curiously, Florida law did not prohibit the plaintiffs—or other individuals unable to meet Florida's licensing requirements—from practicing psychology.  ***Id.*** at 1575-76.  The law only prevented individuals practicing psychology without a license from *holding themselves out* as psychologists.  ***Id.***  When the Eleventh Circuit applied the *Central Hudson* test to the facts of *Abramson*, the court found that allowing the plaintiffs to call themselves "psychologists" in their advertisements would only be potentially—not inherently—misleading.  ***Id.*** at 1577.  In the Court's view, because Florida law permitted the plaintiffs to practice psychology without a license, "truthful advertising which conveyed th[at] message would neither be false nor inherently misleading."  ***Id.***

The Court finds the Eleventh Circuit's reasoning in *Abramson* highly persuasive. Because Plaintiff is permitted by Georgia law to perform incidental engineering services, truthful advertising conveying his ability to perform such services is not inherently misleading. The Court finds that Plaintiff's use of the word "engineering" and other related terms in his advertisements is *potentially* misleading, however, as there is some danger that members of the public will be misled if the advertisements are not read in their proper context. Nonetheless, because Plaintiff's commercial speech is only potentially misleading, it is entitled to First Amendment protection. To avoid a finding that Defendants' regulation of Plaintiff's commercial speech violated his First Amendment rights, Defendants must satisfy the remaining three prongs of the *Central Hudson* test.

**b. Is the governmental interest in regulating Plaintiff's commercial speech substantial?**

To satisfy the second prong of the *Central Hudson* test, the asserted government interest to be served by the commercial-speech regulation must be substantial. In this case, it is undisputed that the Board has a duty to "safeguard the life, health, or property of Georgia's citizens" by regulating the practices of engineering and land surveying and preventing the unlicensed practice of these professions within the state. O.C.G.A. § 43-15-1, 3.

In light of the foregoing statutory provisions and Plaintiff's admission that Defendants have satisfied this element, the Court finds the above requirement is met in this case. *See, e.g.,* ***Borgner v. Brooks***, 284 F.3d 1204, 1210 (11th Cir. 2002) (states have general interest in regulating certain professions, and have "broad power to establish standards for licensing practitioners") (quoting

16

*Fla. Bar Ass'n v. Went For It*, 515 U.S. 618, 625 (1995)).

### c. Does the regulation at issue directly advance the governmental interest asserted?

"The third prong of the *Central Hudson* test has been described as its 'penultimate prong.'" *Id*. at 1211 (quoting *Mason v. Fla. Bar*, 208 F.3d 952, 956 (11th Cir. 2000)). This portion of the test requires Defendants to prove that their regulation of Plaintiff's commercial speech promotes the state's interests in a "direct and material way." *Went For It*, 515 U.S. at 625. A state's burden of proving that the regulation directly advances the governmental interests asserted is not "satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 496 (1995). Tangible evidence that the restricted commercial speech is misleading and harmful to consumers is usually required before a court will find that the regulation at issue directly advances the governmental interest asserted. *Borgner*, 284 F.3d at 1211. In *Borgner*, a dentist and a dental association sued the state board of dentistry, alleging that the board's regulations requiring disclaimers in advertisements promoting specialty services placed an unconstitutional burden on their First Amendment rights. *Id.* at 1207. Specifically, the plaintiffs challenged the board's requirement that dentists who advertise that they are "certified by a board as a specialist in a particular area" either be certified by the state, or include a disclaimer explaining that the specialty is not recognized by the American Dental Association (ADA) or the state board. *Id.* at 1209. The

17

plaintiffs also challenged a regulation requiring dentists wishing to advertise membership in a specialty organization not approved by the ADA or the board to include a disclaimer explaining that the organization was not recognized as a bona fide specialty accrediting organization by the ADA or the board. *Id.* To demonstrate that the challenged regulation addressed and alleviated an identifiable risk of harm to the public, the state presented the results of two telephone surveys. *Id.* at 1211. The survey results indicated that the plaintiffs' advertising—without the appropriate disclaimers—was misleading because a majority of the people surveyed mistakenly assumed that the plaintiffs' credentials and organizational membership were approved by the state. *Id.* In light of the foregoing evidence, the Eleventh Circuit found that the disclaimer requirements at issue directly advanced the governmental interests asserted by eliminating the risk of harm (i.e. misleading advertisements) to consumers. *Id.*

The Supreme Court reached the opposite result in *Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 138-39 (1994), holding that a state board of accountancy's reprimand of an attorney for her advertisement which listed, among other credentials, her status as a certified public accountant ("CPA") and a certified financial planner ("CPF") violated her First Amendment right to commercial speech. Although the state board claimed that the plaintiff's advertisement was false and misleading, the Court rejected this argument, finding that the board's reprimand of the attorney did not satisfy the third prong of the *Central Hudson* test. The only tangible evidence offered by the board to support its actions was the testimony of three witnesses,

all of whom testified that the challenged advertisement was misleading. *Id.* at 145 n.10. The Court deemed this evidence insufficient to meet the state's burden, however, because the witnesses were all present or former members of the state's department of professional regulation, and not objective members of the public. *Id.* In the Court's view, the witnesses' collective opinion that the public was misled by the attorney's advertisement merely represented the board's point of view, and was not indicative that the public was <u>actually</u> misled by the advertisement, or that the state's regulation alleviated the alleged harm presented by the advertisement to a material degree. *Id.*

Here, the only tangible evidence supporting Defendants' argument that Plaintiff's advertisement created an identifiable harm to consumers is a professional engineer's expert testimony that Plaintiff's advertisement is misleading. This testimony, like the witnesses' testimony in *Ibanez*, simply represents the opinions of the Board and the engineer; it does not indicate that the public was misled by Plaintiff's advertisement, or that the Board's regulation of the advertisement alleviated the perceived risk of harm to a material degree. Thus, because Defendants' argument rests on mere speculation and conjecture, the Court finds that Defendants have not satisfied the third prong of the *Central Hudson* test. Although this finding would be sufficient to conclude the Court's *Central Hudson* inquiry, the Court will address the fourth and final prong of this test before proceeding with its qualified-immunity analysis.

**d. Is the regulation more extensive than necessary to serve the governmental interest?**

The Court now turns to the fourth prong of the *Central Hudson* test. Plaintiff claims that Defendants have not satisfied this prong because their attempt to completely ban the use of the word "engineering" and related terminology is "more extensive than necessary to further the state's interest," and alternatives to banning the use of that term—such as a disclaimer requirement—"would still serve the state's interest." (Pl.'s Resp. Br. 19.)

To satisfy the above requirement, Defendants must prove that their attempted regulation of Plaintiff's commercial speech is not more extensive than necessary to serve the state's asserted interest in preventing the unlicensed practice of engineering and land surveying within the state. Specifically, Defendants must show that they "adopt[ed] narrowly tailored means for directly advancing the state's interest while preserving [ ] [P]laintiff's right to disseminate truthful commercial speech." *Abramson*, 949 F.2d at 1578. In addition to protecting Plaintiff's right to disseminate truthful commercial information, Defendants' regulation must also, to the extent possible, protect "the public's right to *receive* truthful commercial information under the First Amendment." *Id.* (emphasis added). "People will perceive their own best interests if only they are well enough informed, and the best means to that end is to open the channels of communication, rather than to close them. . . . [T]he First Amendment presumes that some accurate information is better than no information at all." *Cent. Hudson*, 447 U.S. at 562 (internal citations and quotation marks omitted).

Defendants' absolute prohibition on Plaintiff's use of "engineering" and "site engineering" in his advertisements impermissibly interferes with Plaintiff's right to disseminate, and the public's right to receive, truthful information about Plaintiff's landscape architecture practice. Here, the state's interest in protecting its citizens from unlicensed engineers and land surveyors can be furthered by more—not less—disclosure. Plaintiff could avoid the potential for misleading the public in his advertisements by including a disclaimer explaining that, although he is a licensed landscape architect, he is neither a licensed engineer, nor a licensed land surveyor. "A disclaimer to such an effect would adequately address the state's concern." *Parker v. Commonwealth of Ky.*, 818 F.2d 504, 510 (6th Cir. 1987) (finding state's outright prohibition on general practicing dentist's use of "orthodontics" and related terminology in advertisement unconstitutional because information conveyed in advertisement could be presented in a way that was not misleading). Therefore, because the state's interest in preventing the unauthorized practice of engineering and land surveying could be better served by a disclaimer requirement, the Court finds that Defendants' absolute prohibition of the use of certain terminology in Plaintiff's advertisements is more extensive than necessary to serve the state's interests.

Accordingly, because Defendants have not satisfied the third and fourth prongs of the *Central Hudson* test, the Court holds that Defendants' regulation of Plaintiff's advertisement placed an unconstitutional burden on Plaintiff's First Amendment right to commercial speech. Having found a constitutional violation, the Court must now determine whether Plaintiff's commercial-

speech rights were clearly established at the time of the violation.

**3.      Were Plaintiff's First Amendment Rights Clearly Established?**

A constitutional right is clearly established if "[t]he contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." ***United States v. Lanier***, 520 U.S. 259, 270 (1997).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful . . . but it is to say that in the light of preexisting law the unlawfulness must be apparent." ***Anderson v. Creighton***, 483 U.S. 635, 640 (1987) (internal citation omitted).  When evaluating whether a constitutional right was clearly established at the time of the alleged constitutional deprivation, the "salient question . . . is whether the state of the law . . . gave [the official] *fair warning* that [his] alleged treatment [of the plaintiff] was unconstitutional." ***Hope v. Pelzer***, 536 U.S. 730, 731 (2002).  This warning can be provided in three ways.  First, a federal statute or constitutional provision may in itself "be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law." ***Vinyard v. Wilson***, 311 F.3d 1340, 1350 (11th Cir. 2002).  Second, preexisting case law articulating "broad statements of principle" that "are not tied to particularized facts" may provide fair notice that certain conduct is unconstitutional.  ***Id.*** at 1351.  Lastly, if there is no case law articulating a broad holding that is not tied to particularized facts, then courts look to judicial precedent that is tied to particularized facts.  ***Id.***

To determine whether Plaintiff's First Amendment right to advertise using the terms "engineering" and "site engineering" was clearly established, the Court need look no further than the result reached in *Abramson*. The Eleventh Circuit's holding in *Abramson* clearly established that a state may not absolutely prohibit members of a profession from advertising their ability to perform services that they are legally authorized to render. Thus, Defendants were fairly warned that, because Georgia law authorizes Plaintiff to perform incidental engineering services, they could not prevent Plaintiff's dissemination of truthful information about his ability to provide such services through the use of "engineering" and related terms in his advertisements.

Accordingly, because Defendants violated Plaintiff's clearly-established right to free commercial speech under the First Amendment, Defendants are not entitled to qualified immunity from, nor summary judgment on, Plaintiff's First Amendment claim against them.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 62) is hereby **DENIED**.

SO ORDERED, this 6th day of December, 2006.


**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/jab